UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

XING XIAO,
                    *Petitioner*,

        v.                                            No. 1:25-cv-2382-MSN-IDD

KRISTI NOEM, *et al.*,
                    *Respondents*.

## <u>ORDER</u>

This matter comes before the Court on Xing Xiao's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and his potential removal to a third country. ICE has held Petitioner in immigration detention since February 21, 2025. Petitioner argues that his continued detention violates (1) 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his right to due process; (3) his right to be free from unlawful detention; and (4) regulations governing the revocation of release from immigration detention, 8 C.F.R. § 241.4(*l*). Petitioner further challenges his potential removal to a third country as a violation of his right to procedural due process.

For the reasons that follow, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231 and his right to due process and grants his Petition as to Counts I and II.

## I.    BACKGROUND

Petitioner, a 49-year-old native and citizen of China, entered the United States on June 13, 1994. ECF 1 ¶ 21; ECF 6-1 ¶¶ 5-6. On July 21, 1994, Petitioner failed to appear at his removal

hearing before a New York Immigration Court and was ordered excluded in absentia. ECF 1 ¶ 21; ECF 6-1 ¶ 7.

Petitioner continued to live in the United States after his removal order and, in June 2009, was arrested on several drug and firearm charges as well as conspiracy to use interstate commerce facilities in the commission of murder-for-hire. ECF 1 ¶ 22; *United States of America v. Xiao, et al.*, 1:09-cr-514-RDA-1, ECF 86 (E.D. Va. Dec. 3, 2009). Following his arrest, immigration authorities held Petitioner in immigration detention until September 2009, when he was transferred to a criminal detention center. ECF 1 ¶ 22. Petitioner ultimately pleaded guilty and served a sentence of incarceration until July 2020 when he was released from the custody of the Bureau of Prisons on a term of supervised release. *Id.* at ¶ 23; *Xiao*, 1:09-cr-514, ECF 184. ICE similarly released Petitioner from custody on an Order of Release on Recognizance.[1] ECF 1 ¶ 23.

Following his release, United States Citizenship and Immigration Services issued Petitioner employment authorization documents under "Category C18." *Id.* at ¶ 30; ECF 1-5. Such authorization can only be granted to noncitizens who have received a final order of deportation or removal but who "cannot be removed due to the refusal of all countries designated by the [noncitizen] . . . or because the removal of the [noncitizen] is otherwise impracticable or contrary to the public interest." 8 C.F.R. § 274a.12(c)(18); *see also* 8 U.S.C. § 1231(a)(7). Petitioner also married a U.S. citizen with whom he has a U.S. citizen child. ECF 1 ¶ 24. Petitioner's wife has filed a Form I-130 petition for lawful permanent residency with Petitioner as the beneficiary. *Id.*; *see also* ECF 1-3.

On February 21, 2025, Petitioner appeared at the ICE office in Chantilly, Virginia for his yearly check-in under his Order of Release on Recognizance. ECF 1 ¶ 25. He alleges that ICE did

---

[1] Neither Petitioner nor the Federal Respondents specify when Petitioner was ordered released on recognizance from ICE custody, but Petitioner alleges that he has generally been released from detention since 2020. ECF 1 ¶ 30.

not revoke his Order of Release. Nevertheless, "[w]ithout prior notice or explanation," ICE officers detained him during the check in and transferred him to the Farmville Detention Center. *Id.* at ¶¶ 25-26. Petitioner has remained in detention since that time. *Id.* at ¶ 26.

On May 19, 2025, the Department of Homeland Security ("DHS") completed a 90-day review of Petitioner's detention. *Id.* at ¶ 27; ECF 1-4. It decided to keep him detained pending removal from the United States because Petitioner's "criminal history suggests [he] pose[s] a danger to the community, to the safety of other persons, or to property if released from ICE custody." *Id.* at ¶ 27; ECF 1-4.

On October 2, 2025, more than seven months into Petitioner's detention, DHS sent a request for Petitioner's travel documents to the Consular General of the People's Republic of China. ECF 6-1 ¶ 11. DHS appears to have not heard back.

Meanwhile, on October 10, 2025, DHS completed a 180-day review of Petitioner's detention and again decided to keep him detained. *Id.* at ¶ 12. This time, DHS determined that Petitioner did not meet "the criteria for release set forth in 8 C.F.R. § 241.4(e)" but stated that ICE was actively working to remove Petitioner to the People's Republic of China or to a third country. *Id.*

On December 17, 2025, Petitioner filed this Petition against Kristi Noem, the DHS Secretary; Todd Lyons the Acting Director of ICE; Pamela Bondi, the Attorney General; and Joseph Simon, ICE's Washington Field Office Director (collectively "Federal Respondents"). ECF 1. The Petition also names Jeffrey Crawford, the warden of the Farmville Detention Center. *Id.* Petitioner seeks his immediate release. *Id.*

## II.    DISCUSSION

Under 28 U.S.C. § 2241, district courts may grant habeas relief to petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues, among other things, that his extended detention with no foreseeable likelihood of removal violates 8 U.S.C. § 1231—the statute governing post-removal detention—and his right to due process, entitling him to habeas relief. The Court agrees.[2]

### A.    Legal Background

8 U.S.C. § 1231 governs the detention and removal of noncitizens following final orders of removal. Under 8 U.S.C. § 1231(a) DHS "shall detain" and physically remove noncitizens from the United States during a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A), (2). That period commences upon one of three events: (i) when an removal becomes administratively final; (ii) if the removal order is judicially reviewed and a court orders a stay of the removal, the date of the court's final order; or (iii) if a noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. §1231(a)(1)(B).

After the 90-day deadline for removal, DHS may release a noncitizen subject to terms of supervision. 8 U.S.C. § 1231(a)(6). DHS may also continue to detain a noncitizen in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the

---

[2] Because the Court determines that Petitioner's detention violates due process and 8 U.S.C. § 1231, it need not address Petitioner's other claims about legality of his detention, including whether ICE properly revoked his Order of Release on Recognizance. As for Petitioner's claim that his removal to a third country may violate his right to due process (Count V), this claim is not yet ripe for review. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("A claim should be dismissed as unripe if the [petitioner] has not yet suffered injury and any future impact 'remains wholly speculative.'" (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996))). Petitioner argues that *if* DHS seeks to remove him to a third country, he is entitled to an individualized determination of whether there is a reasonable possibility that he will be persecuted or tortured. ECF 1 ¶¶ 49-50. His argument at this juncture is hypothetical; Petitioner has not alleged any impending removal to a third country and the Federal Respondents claim that "as of this date, ICE has no plans to remove Petitioner to a third country." ECF 6 at 6. The Court will, accordingly, dismiss Count V without prejudice.

noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024). "[I]n authorizing such post-removal-period detention, the statute does not specify a time limit on how long DHS may detain" a noncitizen." *Castaneda*, 95 F.4th at 756 (internal quotation marks and citations omitted).

The Supreme Court, however, has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed the statute to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to Section 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. If a petitioner makes this showing, the burden shifts to the government to rebut the showing. *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [will] shrink." *Id.*

### B.      Application to Petitioner

The Federal Respondents concede, as they must, that Petitioner has been detained for more than six months. ECF 6 at 8. The question thus becomes whether Petitioner has provided good reason to show that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner has met this bar.

First, the Federal Respondents have already determined that Petitioner could not "be removed due to the refusal of all countries designated by [Petitioner] . . . or because the removal of [Petitioner] is otherwise impracticable or contrary to the public interest." 8 C.F.R. § 274a.12(c)(18); *see also* 8 U.S.C. § 1231(a)(7). They thus released him into the community and

issued him employment authorization on that basis. *See* ECF 1-5. There is no evidence in the record to suggest that these circumstances have changed; on the contrary, Petitioner has submitted an article suggesting that the People's Republic of China has "refus[ed] to cooperate" with the United States' repatriation efforts "by declining to issue travel documents." ECF 9-1 at 2. This evidence, which the Federal Respondents have not sought to contest, along with the Federal Respondents' own prior conclusions, suggest that Petitioner's future removal is speculative at best. *See Douglas v. Baker*, --- F. Supp. 3d ---, 2025 WL 2997585, at *4 (D. Md. Oct. 24, 2025) (observing that petitioner's removal to the United Kingdom was not foreseeable in light of an article submitted by petitioner stating that the U.K. had not agreed to accept non-U.K. citizens removed by the U.S.).

The government's actions since Petitioner's detention and final order of removal confirm that his deportation to China is unlikely. The government has not been able to effectuate Petitioner's removal despite keeping him detained for almost a year and despite the over thirty years that have passed since he received a final order of removal. Such extended delays strongly suggest that the government is not reasonably likely to remove Petitioner now. *See, e.g.*, *Douglas*, 2025 WL 2997585, at *4 (concluding that the government's failure to remove petitioner during the nine years after his order of removal and the three-and-a-half months of his detention constituted evidence against the likelihood of removal); *Zavvar v. Scott*, No. 25-cv-2104, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) (concluding that removal was not reasonably foreseeable where, for seventeen years after petitioner's removal order, respondents either made no efforts to remove petitioner or those efforts were unsuccessful).

The Federal Respondents' sole retort is that Petitioner is also to blame for the government's inability to remove him because he has refused to choose a third country to which he would agree

to be deported. ECF 6 at 9. But Petitioner need not designate a third country for the Federal Respondents to effectuate his removal. If it is "impracticable, inadvisable, or impossible" to remove him to China, the INA permits the government to remove him to "another country whose government will accept [him]." 8 U.S.C. § 1231(b)(2)(E). Moreover, the Federal Respondents have disclaimed any plans "to remove Petitioner to a third country." ECF 6 at 6. Petitioner has therefore met his burden to show that the government is not significantly likely to remove him in the foreseeable future.

The Federal Respondents have not rebutted this showing. In response, they point to DHS's October 2, 2025 request to China for travel documents as evidence that "ICE has made progress in removing Petitioner." ECF 6 at 10; *see also id.* at 11 (stating that they have taken "active steps to secure removal [of Petitioner] at some point in the future"). The Federal Respondents do not, however, represent that China has, or will ever, respond. This indeterminate assertion that DHS has "request[ed] . . . travel documents . . . is not sufficient evidence to rebut [P]etitioner's showing that he is unlikely to be removed in the reasonably foreseeable future."[3] *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *see also, e.g.*, *Gilali v. Warden of McHenry Cnty. Jail*, No. 19-cv-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (concluding that, although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and [DHS] continues to follow up on the documents' status . . . [this] does not make removal likely in the reasonably foreseeable future"); *Dao v. Bondi*, No. 2:25-cv-02340-LK, 2026 WL 18626, at *4

---

[3] The Federal Respondents cite to the Report and Recommendation in *Mattete v. Loiselle*, No. 2:06-cv-652, 2007 WL 3223304, at *4 (E.D. Va. Oct. 26, 2007) for the proposition that "[e]ven though a nation has not granted travel documents to a petitioner, or has refused to grant travel documents, [that] does not prove that a petitioner has no reasonable likelihood of being removed." ECF 6 at 10. But in *Mattete*, the petitioner's only evidence that his removal was unlikely was a declaration from his attorney stating that he had overheard officials at two consulates state that they would not issue petitioner travel documents. *Id.* And petitioner was deported while his objections to the Report and Recommendation were still pending. *Id.* at *2. *Mattete* accordingly does not counsel a different result in Petitioner's case.

(W.D. Wash. Jan. 2, 2026) ("General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of [p]etitioner . . . ." (quoting *Zhao v. Kelly*, No. 17-cv-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017))).

The Federal Respondent's showing is particularly inadequate given the length of time Petitioner has already been detained. *See Zadvydas*, 533 U.S. at 701 (cautioning that, as the period of detention grows, what constitutes the "reasonably foreseeable future" will shrink). After almost one year of detention, the Federal Respondents can offer no next steps as to Petitioner's removal or assurances that Petitioner's detention will be finite. *See Castaneda*, 95 F.4th at 757 (explaining that *Zadvydas* applies when detention may be "indefinite" or "potentially permanent" (emphasis omitted)).

The government may not, as it has here, "detain a noncitizen and then sit on its hands." *Douglas*, 2025 WL 2997585, at *5. "Such inaction, or lack of progress in effectuating removal, is precisely what *Zadvydas* forbids." *Id.* Petitioner is thus entitled under *Zadvydas* to issuance of a writ of habeas corpus and release.

## III.    CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Petitioner's continued detention is unlawful under *Zadvydas* and violates his right to due process. Accordingly, it is hereby

ORDERED that the Petition is GRANTED as to Counts I and II; and it is further

ORDERED that Federal Respondents immediately release Petitioner under an Order of Supervision pursuant to § 1231(a)(3); and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from

re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country; and it is further

ORDERED that Respondents file a status report with this Court within three days stating whether Petitioner has been released and if not, why not; and it is further

ORDERED that Count V of the Petition is DISMISSED WITHOUT PREJUDICE.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/

Michael S. Nachmanoff
United States District Judge

January 30, 2026
Alexandria, Virginia

9